IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                  Plaintiff,

      v.

JEOVANTE JONES,

                  Defendant.

OPINION AND ORDER

09-cr-23-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Defendant Jeovante Jones has entered a plea of guilty in this court to being a felon in possession of a firearm, but he has reserved his right to challenge Magistrate Judge Stephen Crocker's recommended denial of defendant's motions to suppress evidence gathered during a warrantless search of his girlfriend's apartment and to suppress his confession as a fruit of the illegal search. The only disputed issue is whether defendant's girlfriend gave voluntary consent to the search of her apartment on July 18, 2008. I conclude that the magistrate judge was correct in his conclusion that she did. Accordingly, I will deny defendant's motions.

1

2                              BACKGROUND

In the summer of 2008, the Beloit, Wisconsin police suspected defendant Jeovante Jones of drug dealing. During the month of July, the police conducted three controlled buys in which defendant sold small quantities of crack cocaine to a confidential informant at three different locations. The informant told police that defendant lived in Beloit with his girlfriend at Unit 2, 1993 Colony Court and that the informant lived in the same complex but had never bought any drugs from defendant there.

Hoping to arrest defendant at the apartment on July 18, the police had the informant order crack from defendant for pickup at the Colony Court address. The police stood by, hidden in a windowless panel van and around the perimeter of the apartment complex. The stage was set for the arrest. At about 9:30 p.m., defendant and his girlfriend, Ethlyn Joseph, drove into the parking lot in a Dodge Durango. They were followed closely by the police raid van.

When defendant realized who was behind him, he jumped out of the car and ran, leaving Joseph and several children behind in the car. As officers pursued defendant, officer Halvorsen concentrated on Joseph. Halvorsen testified that he approached the Durango with his gun in the "low-ready" position, that is, aimed at the ground. Joseph testified that Halvorsen aimed the gun straight at her, while yelling, "I told you I was going to come back. Get on the ground. I told you I was going to get you." Joseph testimony, Tr., dkt. #33, at

2

106.   Joseph obeyed the order to get on the ground.  Halvorsen delayed handcuffing her, because no other officer was around to provide cover, but at some point, he decided to go ahead even without help.  A short while later, Officer Andrew Arnold arrived and turned his attention to Joseph.  Meanwhile, two of Joseph's children and a nephew remained in the vehicle.

Within ten to 15 minutes of talking with Joseph, Arnold secured her consent to search her apartment.  He told her that if she consented, the process would go more quickly.  The subsequent search turned up the evidence that defendant seeks to suppress.


OPINION

The government bears the burden of showing that Joseph acted voluntarily when she agreed to the search.  United States v. Hicks, 539 F.3d 566, 570 (7th Cir. 2008) (citing United States v. Johnson, 495 F.3d 536, 541 (7th Cir. 2007)). The determination rests on the totality of the circumstances, including the age, education, and intelligence of the consenting individual; whether the person was advised of her constitutional rights; how long she was detained before giving consent; whether consent was immediate or prompted by repeated requests; whether there was any physical or psychological coercion; and whether the person giving consent was in custody at the time.  Id.; see also United States v. Griffin, 530 F.3d 739, 742 (7th Cir. 1976).

3

As the magistrate judge pointed out in his report, the parties take very different views of the facts. Ultimately, the determination of what happened comes down to believing either the police or Joseph. In this case, it was legitimate to find, as the magistrate judge did, that the story told by the police was more credible than Joseph's. Joseph has had a number of encounters with the Beloit police, her disdain for the Beloit police is well documented and she had reason to protect defendant.

Defendant objects to several factual findings that the magistrate judge made in situations in which the police and Joseph gave contradictory testimony. The first relates to a difference of opinion about how close the police van pulled in behind defendant's vehicle, but I see no reason to discuss it. Whether it was so close behind defendant's vehicle that Joseph could not have raised the back door of the vehicle is irrelevant to the issues in dispute.

Of more relevance is the disagreement over the officers' treatment of Joseph, including Halvorsen's handling of his gun, his failure to handcuff Joseph immediately, Arnold's alleged removal of her handcuffs and her eventual consent to a search of her apartment. Having read the transcript, as well as the magistrate judge's report and recommendation, I am not persuaded that it was error for the magistrate judge to find the officers's testimony more credible than Joseph's. Joseph had strong reasons to advance a claim of coercion; Halversen and Arnold had much less stronger reasons to shade their stories. Overall, Joseph's

4

testimony is less believable than that of Halvorsen and Arnold.

Defendant contends that Halvorsen's lack of credibility is shown by his testimony that he delayed handcuffing Joseph after he had ordered her to the ground.  If Halvorsen was so concerned for his own safety, defendant asks, why would he not have immobilized Joseph immediately by handcuffing her hands behind her back?

The answer is straightforward.  As Halvorsen explained, he was the only officer on the scene; if he started handcuffing Joseph, there would be no officer to provide cover while he did so.  Tr., dkt. #33, at 20.  As time went on, however, he decided he had to handcuff her, whether or not he had cover.  Id.

Defendant calls it error for the magistrate judge to have found that, in an effort to gain Joseph's cooperation, Officer Arnold removed her handcuffs when he started talking to her. Defendant points out that Joseph testified that she was in handcuffs during the entire interview with Arnold and neither Halvorsen nor Arnold mentioned the removal of Joseph's handcuffs in their reports.  The omission from the police report of any mention of handcuff removal raises no red flags.  It is not unusual for a police report to omit some of the less-important details of a fast-moving operation like the one on July 18.

Defendant disputes the magistrate judge's finding that Joseph's children and nephew were not crying or visibly agitated during Halvorsen's and Arnold's encounters with Joseph, but, for the reasons I have stated, the magistrate judge was entitled to disbelieve Joseph on

5

this point.  Both Halvorsen and Arnold testified that they did not observe any crying or
screaming by the children during the relatively short time they were in the car without their
mother.

Defendant is correct that Arnold testified only that he told Joseph the search process
would be expedited if she consented to the search.  He did not testify that he told her that
if they had to get a warrant, the police would not allow anyone to remain in the residence
until the warrant was obtained so that they could preserve evidence from possible destruction,
whereas  if Joseph consented to the search, everyone could stay in the apartment while the
search was going on.  R&R, dkt. #37, at 3-4.  It is unclear how this correction would help
Joseph.  Neither version demonstrates coercion.  Giving a person truthful information about
the consequences of refusing to consent to a search is not coercion.  E.g., United States v.
Johnson, 495 F.3d 536, 542 (7th Cir. 2007) (not coercion to advise subject that if he does
not consent to search, agents would have to secure his house, limiting residents' ability to
enter and leave).

Joseph testified that she consented only because Arnold told her he would have to call
Child Protective Service to come to take her children if she did not consent.   Joseph
Testimony, Tr., #33, at 109.  The magistrate judge was justified in choosing to disbelieve
Joseph's statement and crediting Arnold's testimony that he did not make such a threat.
Again, this point is of little importance, since it is not even clear that Arnold's telling her he

6

would have to call Child Protective Service would have been a threat.  Telling a person in Joseph's position the predictable consequences of her failure to grant consent is a fair tactic, not one designed to overbear her will.

As to Joseph's testimony that Arnold would not let her go to her children, would not let her ask her sister to get the children and told her "I guess your kids are going to sit here and watch their mother in handcuffs until Child Protective Service come and the search warrant is brought," the magistrate judge did not have to believe this testimony, for the reasons stated previously and also because the undisputed evidence is that Joseph gave her written consent to a search so soon after the police van pulled into the parking lot at Colony Court.

Defendant has not shown that Joseph lacked the age, experience or intelligence to give her informed consent, that she was detained for any extended length of time, that her consent was prompted by so many repeated requests as to overbear her will or that there was any physical or psychological coercion, beyond what any person in Joseph's position would have felt under the circumstances.  She had to be concerned about her children and what was best for them, but this was not a factor attributable to the police.  Considering the factors that go into a voluntary consent, I am persuaded that the magistrate judge made the right decision about the voluntariness of Joseph's consent.

The final issue defendant raises is the validity of the officers' intention to obtain a

7

search warrant if Joseph did not give permission for a search of her apartment.  He argues that it was not legitimate for the officers to tell Joseph they would get a search warrant if she did not consent, because they did not have probable cause to believe that they would find incriminating evidence there.  Defendant makes a strong argument in support of his position that the police had no probable cause for believing that defendant sold drugs from the apartment and would have left any incriminating cooking paraphernalia, packaging materials or drugs in the building.  The police had no information that the informant had ever made a drug sale from Joseph's apartment and they knew that  the preceding three sales had taken place at locations other than Colony Court.  They did, however, have information that defendant was spending the majority of the nights at the Colony Court and they knew that, as a general rule, persons who sell crack cocaine need a place to cook it and that such a place is usually one that is private, has cooking facilities and is readily available.  This was enough to give the officers a reasonable basis for believing that they had sufficient probable cause to support a warrant application.  Hicks, 539 F.3d at 671-72.


ORDER

IT IS ORDERED that the report and recommendation of United States Magistrate Judge Stephen L. Crocker is ADOPTED by the court, with the minor changes noted above, and that defendant Jeovante Jones's motions to suppress the evidence seized on July 18, 2008

from Ethlyn Joseph's apartment and his subsequent confession are DENIED.

Entered this 17th day of August, 2009.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

9